1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7   UNITED STATES OF AMERICA,                    )
8                                    Plaintiff,    )        Case No. 2:08-cr-00295-RCJ-PAL
                                                  )
9   vs.                                           )        **REPORT OF FINDINGS AND**
                                                  )        **RECOMMENDATION**
10  ABEL GARCIA-BAUTISTA,                         )
                                                  )        (Mtn to Dismiss - Dkt. #16)
11                                   Defendant.    )
12  _____  )

13          This matter is before the court on the Motion to Dismiss Based on a Prior Unlawful Deportation

14   (Dkt. #16) filed by Defendant Abel Garcia-Bautista ("Garcia") on February 13, 2009.  The court has

15   considered the Motion, the government's Response (Dkt. #17), Garcia's Reply (Dkt. #18).

16                                          **BACKGROUND**

17          Garcia is charged by way of a criminal Indictment (Dkt. #1) returned November 12, 2008, with

18   one count of Unlawful Reentry of a Deported Alien in violation of 8 U.S.C. § 1326.  The indictment

19   charges that Garcia was deported and removed from the United States on or about June 27, 2002, and

20   on or about October 16, 2008, he returned and was found in the United States, having unlawfully

21   reentered and remained without the express consent of the Attorney General or his successor, the

22   Secretary for Homeland Security under 6 U.S.C. §§ 202(3) & (4) and 6 U.S.C. § 557.  In the current

23   motion, Garcia challenges the lawfulness of the underlying Removal Order.

24          On June 30, 1999, Garcia was charged with one count of Conspiracy to Sell a Controlled

25   Substance in violation of Nevada Revised Statutes ("N.R.S.") §§ 453.401 and 453.321 and two counts

26   of Trafficking in Controlled Substance in violation of N.R.S. § 453.321.  On April 24, 2002, an

27   Amended Indictment was filed against Garcia, charging him with one count of Sale of Controlled

28   Substance in violation of N.R.S. § 453.321.  That same day, Garcia pled guilty to the Amended

1    Indictment, and on May 29, 2002, he received a suspended sentence of twelve to thirty-six months of

2    incarceration and was placed on three years of probation.  On May 31, 2002, a Notice of Intent to Issue

3    a Final Administrative Removal Order ("Notice of Intent") was issued against Garcia, alleging that:

4    (1) he was not a citizen or national of the United States; (2) he was a native and citizen of Mexico;

5    (3) he entered the United States at or near Calexico, CA on or about May, 2001; (4) at that time he was

6    not admitted or paroled after inspection by an Immigration Officer; (5) that he was not admitted for

7    permanent residency; (6) he was convicted on May 22, 2002 in Nevada for Sale of Controlled

8    Substance in violation of N.R.S. § 453.321; and (7) for that offense he was sentenced to a period of

9    confinement for a maximum of thirty-six months and a minimum of twelve months.  Garcia was served

10    with this Notice of Intent in Las Vegas, Nevada on May 31, 2002.

11      Garcia indicated he did not want to contest his deportability by checking the appropriate box on

12    the Form I-851 Certificate of Service for the Notice of Intent (attached to the Motion as Exhibit A),

13    which he returned to the Immigration and Naturalization Service.  Garcia also admitted the allegations

14    and charges in the Notice of Intent, stating he was deportable and acknowledging that he was not

15    eligible for any form of relief from removal.  Id. at Cert. of Svs.  He waived his right to rebut or

16    otherwise contest the charges contained in the Notice of Intent and his right to review the Final

17    Removal Order, and he requested to be removed to Mexico.  Id.  Garcia also waived the 14-day period

18    for execution of the Final Removal Order.  Id.  A Final Administrative Removal Order (the "Removal

19    Order") was issued on June 20, 2002 and served upon Garcia on June 27, 2002.  See Exhibit B of

20    Motion.  Garcia was physically removed to Mexico pursuant to a Warrant of Removal/Deportation on

21    June 27, 2002.  See Exhibit C of Motion.

22      **The Parties' Positions**

23      Garcia asserts that the government should be precluded from reliance on the Removal Order in

24    this matter, and the case should be dismissed because there was a "fundamental defect" in the nature of

25    Mr. Garcia's removal proceeding.  Garcia argues that he was improperly placed in an administrative

26    removal proceeding and that he was statutorily eligible for voluntary departure at the time of his

27    removal.  Further, Garcia asserts his due process rights were violated because he was not advised that

28    he was eligible for relief from removal by voluntary departure.  Garcia argues that his prior state

1    conviction does not categorically constitute an aggravated felony because the Nevada statute under

2    which Garcia was convicted is broader than the federal Controlled Substances Act.  Specifically, Garcia

3    contends that the Nevada statute under which he was convicted punishes conduct which does not

4    require a trafficking element and is not punishable as a felony under the federal Controlled Substances

5    Act.  Garcia also argues that no available judicially noticeable documents show that Garcia was actually

6    convicted of a narrower offense that is also punishable under the Controlled Substances Act.  As a

7    result, Garcia argues, he should not have been considered an aggravated felon and should not have been

8    placed in administrative removal proceedings under 8 U.S.C. § 1228a.  Rather, he should have been

9    placed in a standard removal proceeding under 8 U.S.C. § 1229a and advised of all available forms of

10   relief from removal.  His due process rights were violated because he was processed through an

11   administrative removal proceeding and was not advised that he was eligible for voluntary departure.

12   Therefore, he could not have made a "considered and intelligent" decision to waive his right to appeal

13   the Removal Order.  Garcia asserts he was prejudiced because he had a plausible ground for relief from

14   the removal because he was eligible for voluntary departure as he was neither a terrorist nor an

15   aggravated felon.

16        In response, the government asserts that, under the modified categorical approach discussed

17   below, the immigration officers who reviewed Garcia's case correctly determined that his prior

18   conviction constituted an aggravated felony, and they correctly placed Garcia in administrative removal

19   proceedings.  The government further argues that Garcia did not suffer any prejudice by executing the

20   waiver of immigration hearing, and the Motion should be denied.

21        In reply, Garcia notes that the government does not dispute that the state statute under which he

22   was prosecuted is too broad to qualify categorically as an aggravated felony.  He also asserts that his

23   prior conviction does not qualify as an aggravated felony under the modified categorical approach

24   because there are no judicially noticeable documents to show that he pled guilty to conduct punishable

25   under the Controlled Substances Act.  He was therefore eligible for fast-track voluntary departure.

26   Thus, his removal order was unlawfully obtained, cannot be used to prosecute him for this offense, and

27   the Motion to Dismiss (Dkt. #16) should be granted.

28   / / /

## DISCUSSION

**A.     The Legal Standard for Collateral Attack of a Prior Deportation Order**

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), changed the terminology of the Immigration and Nationality Act ("INA").  Before IIRIRA, aliens who committed aggravated felonies were placed in *deportation* proceedings after being served with an order to show cause.  Ram v. INS, 243 F.3d 510, 513 (9th Cir. 2001).  After IIRIRA, aliens are placed in *removal* proceedings after being served with a notice to appear.  The cases frequently use the terms deportation and removal interchangeably.  8 U.S.C. § 1326(a) makes it a crime for an alien to enter, attempt to enter, or to be found within the United States without consent of the Attorney General after being denied admission, excluded, deported, or removed.

A defendant may collaterally attack a prior deportation or removal to preclude the government from relying on the deportation in a prosecution under section 1326.  Such collateral attacks of underlying deportations or removals rely on the Supreme Court's decision in United States v. Mendoza-Lopez, which held that the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation.  481 U.S. at 838-39; see also United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000).  After the Supreme Court's holding in Mendoza-Lopez, Congress codified when underlying deportations would be subject to such attacks in 8 U.S.C. § 1326(d).  This section reiterates the Court's holding in Mendoza-Lopez, but it also adds an administrative exhaustion requirement.  Pursuant to section 1326(d), an alien may not collaterally attack an underlying deportation proceeding unless he demonstrates that: (1) he exhausted his administrative remedies to seek relief against the deportation order; (2) the deportation proceeding improperly deprived him of the opportunity for judicial review; and (3) the order was fundamentally unfair.  The Ninth Circuit has held that a defendant must demonstrate that his due process rights were violated by defects in his underlying deportation proceeding, and that he suffered prejudice as a result of the violation.  United States v. Proa-Tovar, 975 F.2d 592, 594-95 (9th Cir. 1992) (en banc); Arrieta, 224 F.3d at 1079.

"In a criminal proceeding, an alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order."  Id. (citing United States v. Estrada-Torres,

4

1  179 F.3d 776, 780-81 (9th Cir. 1999), cert. denied, 531 U.S. 864 (2000), overruled on other grounds by,

2  United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir. 2001)).  The exhaustion requirement in section

3  1326(d) cannot bar collateral review of a deportation proceeding unless the waiver of the right to

4  administrative appeal comports with due process.  United States v. Muro-Inclan, 249 F.3d 1180, 1183

5  (9th Cir. 2001).  A waiver of appeal is valid and comports with due process when it is both "considered

6  and intelligent."  Arrieta, 224 F.3d at 1079.  "Such a waiver is not 'considered and intelligent' when

7  'the record contains an inference that the petitioner is eligible for relief from deportation,' but is not

8  "advise[d] . . . of this possibility and give[n] . . . the opportunity to develop the issue.'"  Muro-Inclan,

9  249 F.3d at 1182 (quoting Arrieta, 224 F.3d at 1079 (internal quotation omitted)).  If the waiver is not

10 considered and intelligent, the deportee is deprived of judicial review in violation of due process.

11 United States v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993) (per curiam).  The government

12 bears the burden of proving the waiver.  Id.

13        When a petitioner moves to dismiss an indictment under § 1326 based on a violation of due

14 process in the underlying removal proceeding, he must also show that prejudice resulted from the

15 violation of his due process rights.  Muro-Inclan, 249 F.3d at 1184.  "To establish prejudice, petitioner

16 does not have to show that he actually would have been granted relief.  Instead, he must only show that

17 he had a 'plausible' ground for relief from deportation."  Id. (citation and internal quotation omitted).

18 **B.    Qualification as Aggravated Felony**

19        The primary question for the court to address is whether Garcia's conviction for trafficking in

20 controlled substances under N.R.S. 453.321 qualifies as an aggravated felony for immigration purposes.

21 If it does, Garcia was appropriately placed in expedited administrative removal proceedings under

22 8 U.S.C. § 1228(b), and he was not eligible for relief from removal through voluntary departure under

23 section 1229(c)(A)(2).

24        The term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43)(B) as "any illicit trafficking

25 in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as

26 defined in section 924(c) of Title 18)."  Id.  A controlled substance is "a drug or other substance, or

27 immediate precursor," listed on the accompanying schedules and includes methamphetamine.

28 21 U.S.C. § 802(6).  Drug trafficking means "any felony punishable under the Controlled Substances

5

1    Act." 18 U.S.C. § 924(c)(2).  The Controlled Substances Act defines felony as "any Federal or State

2    offense classified by applicable Federal or State law as a felony."  In <u>Cazarez-Gutierrez v. Ashcroft</u>,

3    382 F.3d 905, 912 (9th Cir. 2004), the Ninth Circuit adopted the approach taken by the Second and

4    Third Circuits and held "that a state drug offense is an aggravated felony for immigration purposes only

5    if it would be punishable as a felony under federal drug laws or the crime contains a trafficking

6    element." <u>Id.</u>

7        In determining whether Garcia's conviction under N.R.S. § 453.321 qualifies as an aggravated

8    felony, the United States Supreme Court outlined a categorical approach in <u>Taylor v. United States</u>,

9    495 U.S. 575 (1990); <u>see also</u> <u>Fernandez-Ruiz v. Gonzalez</u>, 466 F.3d 1121, 1125 (9th Cir. 2006) (en

10   banc); <u>United States v. Castillo-Rivera</u>, 244 F.3d 1020, 1022 (9th Cir. 2001).  Garcia argues that

11   N.R.S. § 453.321 is too broad to categorically qualify as an aggravated felony because it punishes

12   conduct which neither includes a trafficking element nor is punishable as a felony under federal drug

13   laws.  Specifically, Nevada's statute criminalizes "offers" where the Controlled Substances Act does

14   not.  To determine whether a conviction pursuant to a state statute qualifies as an aggravated felony,

15   courts are instructed to make a categoric comparison of the elements of the statute of conviction to

16   determine whether the conduct proscribed by the statute is broader than the generic definition.  <u>Chang</u>

17   <u>v. INS</u>, 307 F.3d 1185, 1189 (9th Cir. 2000).  In doing so, the court must "'[l]ook only to the fact of

18   conviction and the statutory definition of the prior offense.'"  <u>United States v. Corona-Sanchez</u>,

19   291 F.3d 1201, 1203 (9th Cir. 2002) (en banc) (<u>quoting</u> <u>Taylor v. United States</u>, 495 U.S. 575, 601

20   (1990)).

21       Here, Garcia pled guilty to a violation of N.R.S.§ 453.321, which provides in pertinent part:

22           Except as authorized by the provisions of NRS 453.011 to 453.552,
             inclusive, it is unlawful for a person to:
23               (a) Import, transport, sell, exchange, barter, supply, prescribe,
             dispense, give away or administer a controlled or counterfeit
24           substance;
                 (b) Manufacture or compound a counterfeit substance; or
25               (c) Offer or attempt to do any act set forth in paragraph (a) or (b).

26   <u>Id.</u>

27       The government does not challenge Garcia's arguments that the statute under which he was

28   convicted is too broad to qualify categorically as an aggravated felony, and the parties agree that the

1   court must apply a modified categorical approach to determine whether Garcia was convicted of an

2   aggravated felony.  When a statute of conviction is too broad to categorically qualify as an aggravated

3   felony, courts applying the modified categorical approach and examine judicially noticeable documents

4   to determine whether the conduct for which a defendant was convicted fits within the federal definition

5   of an aggravated felony.  United States v. Franklin, 235 F.3d 1165, 1167 (9th Cir. 2000); Shepard v.

6   United States, 544 U.S. 13, 18-19 (2005) (it is proper in applying the modified categorical approach to

7   examine the charging document, terms of any plea agreement, transcript of a plea colloquy, between the

8   judge and the defendant in which the factual basis for the plea was confirmed or some comparable

9   judicial record of this information); United States v. Snellenberger, 548 F.3d 699, 702 (clerk's minute

10   orders may also be considered in applying the modified categorical approach).

11       The government asserts that under the modified categotical approach, Garcia pled guilty to an

12   aggravated felony.  In support, the government has attached the Indictment, the Amended Indictment, a

13   Minute Order from the District Court of Clark County, and a Judgment of Conviction to show that

14   Garcia pled guilty to the charge of trafficking in a controlled substance by selling methamphetamine.

15   The Amended Indictment to which Garcia pled guilty provides in pertinent part:

16               ABEL GARCIA BAUTISTA, is accused by the Clark County Grand Jury of
                 the crime of SALE OF CONTROLLED SUBSTANCES (Felony- N.R.S.
17               453.321), committed at and within the County of Clark, State of Nevada, on
                 or about July 12, 1998, as follows: did then and there wilfully, unlawfully,
18               and feloniously sell to J. Turney, a controlled substance, to-wit:
                 Methamphetamine.
19

20   Id. (attached to government's response).

21       Citing United States v. Velasco-Medina, 305 F.3d 839, 852 (9th Cir. 2002), Garcia correctly

22   asserts that the Amended Indictment contains only the elements of the crime the state set out to prove

23   and does not establish the elements of the offense to which Garcia actually pled guilty.  The charging

24   document alone clearly cannot support a finding that Garcia's conviction was an aggravated felony.  Id.

25   Rather, the government must prove that Garcia admitted all of the elements of an aggravated felony in

26   pleading guilty.  Id.  The government does not rely on the Amended Indictment alone to support its

27   argument that Garcia's conviction qualifies as an aggravated felony.

28   / / /

1         The minute order attached to the government's response states, "NEGOTIATIONS: Defendant

2   will plead to the Amended Indictment pursuant to Alford." Att. at 5.  Garcia, in a footnote, disputes the

3   fact that these court minutes are the equivalent of the formal court minutes that the Ninth Circuit found

4   to be judicially noticeable in Snellenberger.  The court disagrees.  Like the minutes in Snellenberger,

5   these minutes were "prepared by a neutral officer of the court, and...the defendant had the right to

6   examine and challenge its content, whether or not he actually did." 548 F.3d at 702.  Here, the Minute

7   Entry makes clear that Garcia pled to the charge in the Amended Indictment–namely, the wilfull,

8   unlawful, and felonious sale of methamphetamine.  Additionally, the Judgment of Conviction states,

9   "Defendant...entered a plea of guilt to the crime(s) of SALE OF CONTROLLED SUBSTANCE

10  (Felony)...THE DEFENDANT IS HEREBY ADJUDGED guilty of said offense." Att. at 6.  In

11  Velasco-Medina, the Ninth Circuit upheld the District Court, finding that a state conviction qualified as

12  an aggravated felony where the charging document fit the generic definition of an aggravated felony and

13  an Abstract of Judgment reflected the defendant pled guilty to an offense which contained all of the

14  elements. 305 F.3d at 852.  The Ninth Circuit held that by pleading guilty, the defendant admitted all of

15  the facts alleged in the charging document.  Id.; see also United States v. Broce, 488 U.S. 563, 570

16  (1988) (a plea of guilty is an admission that the defendant...committed the crime charged against him)

17  (internal citation omitted); United States v. Harris, 108 F.3d 1107, 1109 (9th Cir. 1997) (holding a

18  guilty plea conclusively proves the factual allegations contained in the charging document).  Thus,

19  applying the modified categorical approach, it is evident that Garcia was charged with, and pled guilty

20  to, selling methamphetamine, a crime which qualifies as an aggravated felony according to 8 U.S.C.

21  § 1101(a)(43).

22        Accordingly, the court finds that Garcia's conviction for sale of a controlled substance in

23  violation of N.R.S. § 453.321 qualifies as an "aggravated felony" for purposes of § 1101(a)(43)(B).  His

24  due process rights were not violated because he was appropriately placed in administrative removal

25  procedures and removed on the basis of a conviction for an offense that qualifies as an aggravated

26  felony.

27  / / /

28  / / /

1

**CONCLUSION**

2         Applying the modified categorical approach, the court finds Garcia's Nevada conviction for sale

3   of a controlled substance qualifies as an aggravated felony for immigration purposes.  Therefore, his

4   due process rights were not violated because he was placed in an expedited removal procedure and not

5   advised of relief from removal.

6         For all of the foregoing reasons,

7         **IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that

8   defendants's Motion to Dismiss Based on a Prior Unlawful Deportation (#16) be **DENIED.**

9         Dated this 6th day of April, 2009.

10

11                                                                    _____

12                                                                    PEGGY A. LEEN
                                                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28